## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**CHIQULA LYNETTE WILSON,**

     **Plaintiff,**

**vs.**                    **Case No.  4:21cv1-MW/CAS**

**KILOLO KIJAKAZI,**
**Acting Commissioner,**
**Social Security Administration,**

     **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act (Act).  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On January 17, 2019, Plaintiff, Chiqula Lynette Wilson, filed an application for a period of disability and DIB and alleged disability beginning December 12, 2018, as amended.[1]  Tr. 31, 122, 210, 213-14, 232-40. (Citations to the record (transcript/administrative record), ECF No. 21, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.)  Disability is based, in part, on traumatic arthritis in the right ankle, dislocated wrist, scoliosis, high blood pressure, and formerly broken legs that have never healed properly.  Tr. 36, 233.

The application was initially denied on March 4, 2019, and upon reconsideration on July 2, 2019.  Tr. 31, 113-50; *see* Tr. 113-21, 124-38 for the reports of the non-examining medical consultants.  Plaintiff requested a

---

[1]  Plaintiff remained insured through December 31, 2019, the date last insured. Tr. 31.  Plaintiff had previously filed a DIB application in November 2014, with an alleged onset date of June 30, 2014.  Tr. 90-112; *see* ECF No. 19 at 2-3.  An Administrative Law Judge (ALJ) entered a decision on February 28, 2017, denying benefits.  This decision was reviewed by the Appeals Council and remanded to the ALJ for further consideration.  Tr. 91-92.  After hearing, on December 11, 2018, ALJ David Herman entered a decision denying Plaintiff's request for benefits finding, in part, that Plaintiff was capable, through the date of that decision, of performing a reduced range of work at the light exertional level despite severe spondylosis of the lumbar spine, neuropathy/complex regional pain syndrome of the right leg, status-post right ankle, tibia, and fibula fracture, status-post right forearm fracture, osteoarthritis of the right angle and right wrist, idiopathic scoliosis, and obesity, and that she was capable of performing jobs that existed in significant numbers economy, although not her past relevant work as a correction officer.  Tr. 94-107; *see* ECF No. 19 at 2-3.  That decision was not further appealed.  ECF No. 19 at 3.  The current amended disability date, December 12, 2018, is the day after ALJ Herman's prior decision, December 11, 2018. Tr. 37.

hearing.  Tr. 31, 150-52.  On February 18, 2020, ALJ David Herman held a hearing in Tallahassee, Florida.  Tr. 31, 48-82.  Plaintiff testified.  Tr. 57-75. Ronnie C. Mayne, an impartial vocational expert, testified.  Tr. 31, 75-80, 301-02. (Resume).  Kristi Drake, an attorney, represented Plaintiff at the hearing.  Tr. 31, 50, 204.

On March 4, 2020, the ALJ entered a decision and denied Plaintiff's application for DIB concluding that Plaintiff was not disabled from December 12, 2018, the amended alleged onset date, through December 31, 2019, the date last insured.  Tr. 41-42.

Thereafter, Plaintiff requested the Appeals Council to review the ALJ's decision.  Tr. 207-09.  This request was received on May 8, 2020. Tr. 4.  Plaintiff's counsel, Larry White, submitted seven (7) pages of medical records from Madison Family Clinic (MFC) dated April 7, 2019, through February 13, 2020.  Tr. 2, 83-89.

On November 2, 2020, the Appeals Council denied Plaintiff's request for review, Tr. 1-6, stating that the submitted evidence from MFC did "not show a reasonable probability that it would change the outcome of the decision."  Tr. 2.  These records do not appear as an exhibit.  *Id*. The ALJ's decision stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

On January 3, 2021, Plaintiff filed a Complaint with this Court seeking

review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of

law, ECF Nos. 19 and 21, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this

appeal:

1. "The claimant last met the insured status requirements [for DIB] of the Social Security Act on December 31, 2019."  Tr. 33.

2. "The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of December 12, 2018[,] through her date last insured of December 31, 2019."  *Id*.

3. "Through the date last insured, the claimant had the following severe impairments: spondylosis of the lumbar spine; neuropathy/complex regional pain syndrome of right leg; status post right ankle, tibia, and fibula fracture; status post right forearm fracture; osteoarthritis of the right ankle and right wrist; idiopathic scoliosis; obesity; sacroiliitis/lumbar facet syndrome; post-traumatic osteoarthritis of the right ankle and foot; and depression."  *Id*.  The ALJ determined that these impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28."  *Id*.  The ALJ further determined that the "claimant had the non-medically determinable impairment of post-traumatic stress disorder (PTSD).  The record does include a diagnosis by an acceptable medical source (AMS).  The symptoms of PTSD were considered in the [ALJ's] analysis of the claimant's severe impairment of depression."  Tr. 34.

4. "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1."[2]  Tr. 34.  In part, the ALJ considered the applicability of Listing 1.04 and determined that "none of the medical records establishes findings or symptoms severe enough to qualify under [L]isting 1.04."  *Id*.  The ALJ determined that the claimant did not meet Listing 1.02A and B.  *Id*.  Additionally, the ALJ considered the criteria of Listing 12.04 and the "paragraph B" criteria.  The ALJ determined that the claimant had a *mild* limitation in understanding, remembering, or applying information and a *moderate* limitation in interacting with others, regarding concentrating, persisting, or maintaining pace, and for adapting or managing oneself.  Tr. 34-35.[3]  The ALJ also considered whether the "paragraph C" criteria were satisfied and determined that "[t]he claimant did not satisfy criterion C.2. or section [sic] overall."  *Id*.

5. "[T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b), except that the claimant could have stood for a maximum of four hours, and could have walked for a maximum of four hours.  The claimant could have frequently handled, fingered, and operated hand controls with the right hand.  The claimant could have occasionally operated foot controls with the right leg.  The claimant could have occasionally climbed stairs, but could not have climbed ladders.  The claimant could have frequently balanced, and could have occasionally stooped, knelt, crouched, and crawled.   The claimant could have occasionally been exposed to unprotected heights and moving mechanical parts.   The claimant could have performed simple and routine tasks (further described as unskilled work with a reasoning level of 3 or lower per the Dictionary of Occupational Titles (DOT)) [*see* Tr. 416].  The claimant could have frequently

---

[2]  The ALJ is not required to identify all impairments that should be considered severe.  *See* Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); *see also* Mariarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).  Plaintiff does not claim the ALJ omitted a severe impairment.  ECF No. 19.

[3]  The ALJ correctly stated that the limitations identified in the "paragraph B" criteria are not an RFC assessment, but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  Tr. 35.

interacted with the general public.  The claimant could have adapted to few changes in the work setting."[4]  Tr. 35-36.

6. "Through the date last insured, the claimant was unable to perform past relevant work" as a correction officer, government services, defined in the DOT as medium exertional level, semi-skilled.  The ALJ further determined that "[t]he demands of the claimant's past relevant work exceed the [RFC]" and "the claimant was unable to perform past relevant work as actually or generally performed." Tr. 40.

7. The claimant was born in 1978 and "was 41 years old, which is defined as a younger individual age 18-49, on the date last insured."  Tr. 40.  Plaintiff has at least a high school education and is able to communicate in English.  Transferability of jobs is not material in this case.  *Id*.

8. "Through the date last insured, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed" such as the representative jobs/occupations of office clerk assistant, ticket clerk, and house sitter, which are light exertional level and unskilled.[5]  The

---

[4] "Occasionally" means: "activity or condition exists up to 1/3 of the time." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § IV Physical Demands-Strength Rating.  "Frequently" means: "activity or condition exists from 1/3 to 2/3 of the time."  *Id*.

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a). Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including one month."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1981), App. C: Components of the Definition Trailer, § II, SVP.  "[SVP] it is defined as the amount of elapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id*.  Unskilled work corresponds to an SVP of 1 and 2.  SSR  00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  *See* Buckwalter v. Comm'r of Soc. Sec., 5 F.4th 1315 (11th Cir. 2021) (discussing SVP Levels 1 and 2).

vocational expert testified these jobs are classified as an SVP of 2. Tr. 77.

9. "The claimant was not under a disability, as defined in the Social Security Act, at any time from December 12, 2018, the amended alleged onset date, through December 31, 2019, the date last insured."  Tr. 41.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); *see also* Biestek v. Berryhill, _U.S._, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (Substantial evidence "means-and means only-such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citations and internal quotation marks omitted)).  "Substantial evidence is more than a scintilla, but less than a preponderance." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[6]

---

[6] This Court may not reweigh the evidence or substitute its own judgment for that of the Commissioner.  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips, 357 F.3d at 1240 n.8 (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 224 (2002). In addition, an individual is entitled to DIB if he or she is under a disability prior to the expiration of his or her insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y

of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz

Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

Plaintiff had to prove that she became disabled on or before December 31,

2019, her date last insured.  Tr. 31, 215, 230.  A showing that an

impairment became disabling after the expiration of the claimant's insured

status is insufficient to establish eligibility for DIB.  *See* Mason v. Comm'r of

Soc. Sec., 430 F. App'x 830, 831 (11th Cir. 2011) (unpublished).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal the criteria listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[7]

---

[7]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon *all* of the relevant evidence including the claimant's description of limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*; *see* SSR 96-8p (July 2, 1996); *see also* Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC.").  The responsibility for determining a claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").  Relevant medical and other evidence includes, among other things, medical history, medical signs and laboratory findings, (*i.e.*, side

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R.

---

effects of medication), daily activities, lay evidence, recorded observations, and ethical source statements.  SSR 96-8p (July 2, 1996).

§ 404.1520(a)(4)(v).  If the Commissioner carries this burden, the claimant

must prove that he or she cannot perform the work suggested by the

Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

A claimant bears the burden of proving he or she is disabled and is

responsible for producing evidence in support of the claim.  *See* 20 C.F.R.

§ 404.1512(a); Moore, 405 F.3d at 1211.

## IV.  Legal Analysis

### The ALJ did not err when denying Plaintiff's application for Social Security benefits.

Plaintiff raises two issues for consideration.  First, Plaintiff argues the

ALJ erroneously evaluated the medical evidence of record, including but

not limited to the opinions of Dr. Dulay, in determining Plaintiff's RFC.

Second, Plaintiff argues the ALJ erroneously evaluated Plaintiff's testimony

regarding her symptoms and limitations in determining the RFC.

1.

An ALJ was required to weigh a medical opinion under prior

regulations applicable to claims filed before March 27, 2017.  *See* 20

C.F.R. § 404.1520c.  However, the regulations applicable to this case

remove the treating source rule and state an ALJ "will not defer or give any

specific evidentiary weight, including controlling weight, to any medical

opinion(s).  *See* 20 C.F.R. § 404.1520c(a).  Here, the ALJ restated this

Case No.  4:21cv1-MW/CAS

general rule but noted, in part: "The undersigned has fully considered the medical opinions and prior administrative medical findings as follows…." Tr. 39.

Stated otherwise, "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our prior caselaw in the past." Webster v. Kijakazi, No. 20-60856, 2021 U.S. App. LEXIS 35340, at *5, 2021 WL 5563333 (5th Cir Nov. 29, 2021) (*citing* "82 Fed. Reg. 5853 (Jan. 18, 2017) (commenting that the rule change would enable courts to focus on 'the content of the evidence [rather] than on the source.'")).

The relatively new regulations control consideration of the proper weight given to medical opinions. *See* 20 C.F.R. § 404.1520c(a)-(c); *see also* 20 C.F.R. § 404.1513(a)(2) (defining medical opinion). The regulations contain a source-level articulation requirement, *i.e.,* the ALJ considers multiple medical opinions from a source in a single analysis. 20 C.F.R. § 404.1520c(b)(1). The ALJ is not required to address every limitation identified by a medical source. *Id*.

Under the regulations applicable to this case, an ALJ must consider and assess medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) the

specialization of the medical source; and (5) other factors that tend to support or contradict a medical opinion, including the source's familiarity with other evidence in the claim, or understanding of SSA policies and evidentiary requirements.  20 C.F.R. § 404.1520c(c)(1)-(5).  "The most important factors we consider when we evaluative the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."  20 C.F.R. § 404.1520c(a); *see also* Webster v. Kijakazi, *supra*.  "Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."  20 C.F.R. § 404.1520c(b)(2).

Regarding "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  Regarding "consistency," "[t]he more consistent a prior medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) or prior administrative medical finding(s) will be." 20

C.F.R. § 404.1520c(c)(2). "A medical source may have a better

understanding of your impairment(s) if he or she examines you than if the

medical source only reviews evidence in your folder."

20 C.F.R. § 404.1520c(c)(3)(v). "When we consider the medical source's

familiarity with the other evidence in a claim, we will also consider whether

new evidence we receive after the medical source made his or her

medical opinion or prior administrative medical finding makes the medical

opinion or prior administrative medical finding more or less persuasive."

20 C.F.R. § 404.1520c(c)(5). "[ALJs] are not required to adopt any prior

administrative medical findings, but they must consider this evidence

according to §§ 404.1520b, 404.1520c, and 404.1527, as

appropriate." 20 C.F.R. § 404.1513a(b)(1).

   The record contains, among other records, *see, e.g., infra* at 15 n.8,

nine pages of medical records from Adolfo C. Dulay, M.D., one of Plaintiff's

treating physicians. Tr. 610-20; *see also* Tr. 103-05 (prior decision). The

visits were on February 21, 2019; March 26, 2019; April 29, 2019; June 4,

2019; July 16, 2019; August 6, 2019; September 17, 2019; October 29,

2019; and December 9, 2019. Tr. 610-18. The records are mainly

handwritten and illegible.[8]  *Id.*  On January 7, 2020, Dr. Dulay provided a

two-page check-off sheet indicating Plaintiff's limitations, which are

favorable to Plaintiff's claim of disability.[9]  Tr. 619-20.  For example,

Dr. Dulay opined Plaintiff would be off task 25% or more during the

workday.  Tr. 619-20.  The vocational expert opined there would be no jobs

available for a person who would be off task more than 25% of the

workday.  Tr. 80.

The ALJ determined Dr. Dulay's opinion was "not persuasive" and

further noted:

> It includes extreme limits relative to sit/stand/walk, changing positions
> at will, taking frequent breaks, using hands for manipulation and
> reaching, being off task, lifting less than five pounds, and being

---

[8]  There are other illegible records for Dr. Dulay from June 4, 2018, to January 8, 2019.  Tr. 386-93; *see also* Tr. 88-89 (Jan. 7, 2020; Feb. 13, 2020).

[9]  Courts have found checkbox notations are "not particularly informative" and are "weak evidence at best."  *See* Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); Dixon v. Astrue, No. 5:09-cv-320/RS/EMT, 2010 U.S. Dist. LEXIS 125831, at *46-48  (N.D. Fla. Oct. 26, 2010) (explaining that ALJ properly rejected opinions expressed by treating physician on "check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms); Jones v. Comm'r of Soc. Sec., 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations); *see also* Foster v. Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physicians use of "questionnaire" format typifies "brief or conclusory" testimony). Simply put, Dr. Dulay did not provide an acceptable explanation for his opinions or refer to objective medical evidence to support his opinions in this case.  *See* Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004).

incapable of low stress were, that are not supported by the overall record. The [RFC] includes reasonable exertional, postural, manipulative, environmental, and mental limitations based on a review of the overall record. The claimant is not disabled (*e.g.*, B4F/B5F/B6F/B8F/B9F/B10F/B13F/hearing testimony).

Tr. 40, 619-20.[10] As support, the ALJ cited medical exhibits, which are discussed earlier in the decision. *Compare* Tr. 37-39 *with* Tr. 40.

On this point, Plaintiff faults the ALJ for making a "non-specific" citation to the medical record. ECF No. 19 at 10-11. The regulations, however, do not preclude an ALJ from referring to evidence discussed elsewhere in the decision when evaluating medical opinions. *See generally* Rice v. Barnhart, 384 F.3d 363, 370 n.5 (7th Cir. 2004). Further, the ALJ's decision should be considered as an "entire opinion." Bradford v. Sec'y of Dep't of Health & Human Servs., 803 F.2d 871, 873 (6th Cir. 1986). The ALJ did not err when considering Dr. Dulay's opinion. *See* Serrano v.

---

[10] As noted herein, by regulation, the SSA does not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including a claimant's prior medical sources. 20 C.F.R. § 404.1520c(a). It is instructive to note that the same ALJ, in the prior proceeding, considered the medical records and opinions of Dr. Dulay, Tr. 103-05, and gave these opinions "less than significant weight because of their inconsistency with the overall evidence received at the hearing level…." Tr. 105. The ALJ had rejected Dr. Dulay's "suggested limitations," which he characterized as "extreme and simply not supported by objective evidence or his own treatment notes," and also noted that his "suggested limitations are inconsistent with the claimant's reported activities of daily living…" The ALJ further noted that "Dr. Dulay did not have the benefit of reviewing all the evidence received at the hearing level prior to making the opinions" and, as a result, "the opinions are not reflective of the totality of the evidence." *Id.*

Comm'r of Soc. Sec., No. 4:19cv241-AW-HTC, 2020 WL 5550505, at *7 (N.D. Fla. Aug. 7, 2020) ("The ALJ's explanation that Dr. Dickens' opinions are not supported by the objective examinations is also not conclusory.  To the contrary, the ALJ states that he is referencing the objective examinations discussed elsewhere in this opinion.")  Stated otherwise, in reading the ALJ's decision, it is evident that the ALJ's consideration of Dr. Dulay's opinion was not erroneous.

The ALJ sets forth the five disabling conditions identified in the initial claim form and summarizes Plaintiff's testimony during the hearing.  Tr. 36; *see infra* at 27-30 for a discussion of information in the pain questionnaires.

The ALJ discusses the medical evidence relating to each severe impairment beginning with Plaintiff's *spondylolysis of the lumbar spine*, *et al*.  Tr. 37.  The ALJ notes that Plaintiff "has a longitudinal history [between August 2011 and July 2018] of treatment for back pain, much of which is addressed in the" ALJ's prior decision.  Tr. 103-05 (Exhibit B2A); Tr. 37.

The ALJ notes that since the prior decision, Plaintiff "has had reports of back pain and discomfort due to her severe impairments, including but not limited to "spondylolysis of the lumbar spine; sacroiliac/lumbar facet syndrome," *et al*., which the ALJ found were "not disabling because they do

not preclude [Plaintiff] from engaging in substantial gainful activity." *Id*.

The ALJ added:

> Treatment notes and imagery from 2019 in Exhibit B9F [Tr. 578-96; May 13, 2019-Oct. 21, 2019] (Tallahassee Neurological Clinic [TNC]) show that the claimant had mild scoliosis and mild disc degeneration, and further show that the claimant's reports of back pain were inconsistent with the pertinent imagery [Tr. 578]. The records also show that joint injections and radiofrequency ablations, along with prescription pain medication, have given a level of pain relief to the claimant [Tr. 578]. Moreover, treatment notes indicate that over a three-month period, the claimant's reported pain levels decreased, and that the claimant's adherence to the medication regimen might not always have been complete [Tr. 583, 589, 594, 596].[11]

> Treatment records and imagery from 2019 in Exhibit B8F [Tr. 560-75] (Tallahassee Orthopedic Clinic [TOC]) generally support and reinforce the findings in Exhibit B9F discussed above. The claimant was noted to show good coordination, no sensory abnormality, no muscle atrophy, a normal gait, and intact deep tendon reflexes. The notes further indicate that "Active and passive rotation of the hips does not reproduce the patient's low back symptoms" (B8F/6) [Tr. 565-Aug. 27, 2019; *compare with* Tr. 398-Apr. 3, 2019].[12]

---

[11] The patient notes indicate that Plaintiff did not adhere to her medication regimen, *e.g.*, she did not get prescriptions filled. *Id*. Plaintiff was discharged from TNC on October 21, 2019. Tr. 596.

[12] The August 27, 2019, TOC record, Tr. 565, is like the April 3, 2019, TOC record, Tr. 398, but adds an "x-ray interpretation": "Standing x-rays of the thoracic spine and lumbar spine are obtained for scoliosis series. There is a single major curve of 41 degree dextroscoliosis at T11. In the lateral view of the spine there is a mild thoracic flattening and mild lumbar hyperlordosis. Hip joints, sacroiliac joints, and bony pelvis are normal. There is no evidence of fracture or subluxation. No other significant findings on the x-rays." Tr. 565. Plaintiff makes much of the ALJ neglecting to recite to other portions of these notes which tend to support Plaintiff's view of the evidence and her alleged disability. ECF No. 19 at 11-13. Similar observations are noted regarding some of the ALJ's other findings. *Id*. at 13-15. Although these excerpts from the records tend to support Plaintiff's claims, it is not the function of this Court to re-weigh the evidence. *See supra* at 7 n.6; *see also* Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005); Wilson, 284 F.3d at 1221 (holding that district court erred in reversing ALJ's

The undersigned further notes that physical therapy records from February 2020 indicate that relative to a six-week course of skilled therapy services, the "Overall rehabilitation potential is excellent" (B13F/1) [Tr. 621-22-Feb. 13, 2020].  While the physical therapist who apparently dictated the record is not an acceptable medical source (AMS), the undersigned has considered the physical therapy records in light of the overall record and in developing the residual functional capacity.[13]

At the hearing for the instant claim, the claimant stated that she does not regularly use an assistive device to ambulate [Tr. 67].

Tr. 37.  The ALJ determined that Plaintiff's severe impairment of

*spondylolysis of the lumbar spine; sacroiliitis/lumbar facet syndrome," et al.*,

were also not disabling.  Tr. 37, *citing* Exhibits B4F/B5F/B8F/B13F.

The ALJ restated Plaintiff's severe impairment of *obesity* and noted:

The claimant has had body mass indices (BMI) above thirty, indicating a level of obesity.  At each step of the sequential evaluation process, the undersigned has specifically considered the effects of the claimant's obesity under Social Security Ruling 19-2p in formulating the claimant's residual functional capacity.  The claimant's severe impairment of obesity did not preclude her from

---

denial of disability benefits because substantial evidence supporting ALJ's denial existed).

[13] Plaintiff was frequently examined for a host of ailments by George Alexander, M.D., at TOC.  Tr. 419-20, 423; *see also* Tr. 398 (Apr. 3, 2019).  Dr. Alexander notes that Plaintiff had previously attended "approximately 15 sessions" of physical therapy. Tr. 419.  Plaintiff had a normal neurological examination, *e.g.*, her balance and gait were normal, but had decreased range of motion during the cervical spine, thoracic spine, and lumbar spine examinations.  *Id. See* Tr. 398, 565, 578 for similar findings in 2019.  Plaintiff appeared healthy and in no distress. Tr. 398, 412.  On April 18, 2019, Dr. Alexander recommended "skilled therapy in conjunction with a home exercise program."  Tr. 438.  "Overall rehabilitation potential is good."  *Id*.  It is noted elsewhere on February 13, 2020, that Plaintiff stated: "she stopped attending PT last year due to anxiety issues."  Tr. 621.

Case No.  4:21cv1-MW/CAS

engaging in substantial gainful activity and therefore was not disabling (*e.g.*, B4F/B9F) [Tr. 394-400; Tr. 576-97].

Tr. 37.

Plaintiff had severe impairments of status post right ankle, tibia, and fibula fracture and status post right forum fracture to which the ALJ noted:

> The claimant had previously been involved in a motor vehicle accident, and these impairments were discussed in the prior decision (B2A) [Tr. 103]. The prior decision noted that pertinent examinations relative to these impairments generally found normal gait, normal strength, and intact sensation. Relative to these impairments, the undersigned finds nothing in the subsequent record, relative to the current claim, to indicate that the claimant was precluded from engaging in substantial gainful activity. These impairments therefore were not disabling (*e.g.*, B4F/B5F/B8F/B9F/B13F).

Tr. 38.

The ALJ discusses the other severe impairments considering the medical evidence. Tr. 38.

> The claimant had the severe impairments of osteoarthritis of the right ankle and right wrist; and post-traumatic osteoarthritis of the right ankle and foot. The prior decision (B2A) [Tr. 103-04] notes the existence and treatment of the claimant's osteoarthritis of the right ankle and foot. It further notes that these conditions were treated with pain relievers and that the claimant's functionality relative to osteoarthritis of the right ankle and foot was not impacted to the point that the claimant was precluded from engaging in substantial gainful activity. Examination of the right wrist in 2019 showed 5/5 strength (1 = weakest, 5 = strongest), and full range of motion (B8F). Examination of the right ankle in 2019 showed 5/5 strength, with limitations in range of motion. Imagery showed joint arthritis (B8F). The use of a brace and anti-inflammatories were discussed in addition to surgical options [Tr. 562, 569-72]. The undersigned finds

no support in the record relative to the current claim to conclude that these impairments were disabling.

The claimant had the severe impairment of post-traumatic osteoarthritis of the right ankle and foot.  Diagnosis is in the record. The claimant presented to Tallahassee Orthopedic Clinic in 2019 with right ankle pain that is described as "chronic right ankle pain with posttraumatic osteoarthritis 8 years status post right fracture dislocation ORIF right tibiotalar joint" (B8F/13) [Tr. 572].  The claimant received a Toradol injection, along with topical gel and a prescription for ibuprofen.  She was directed to have weight-bearing activity on the ankle as tolerated.  The severe impairment of post-traumatic osteoarthritis of the right ankle and foot did not preclude the claimant from engaging in substantial gainful activity and therefore was not disabling.

The claimant had the severe impairment of neuropathy/complex regional pain syndrome of right leg.  The prior decision (B2A) [Tr. 104] addressed this impairment, and noted that pertinent examinations found normal gait, normal strength in the bilateral lower extremities, intact sensation of the bilateral lower extremities.[14]  The undersigned finds no support in the record relative to the current claim to conclude that these impairments were disabling.

The claimant had the severe impairment of depression.  The record shows that the claimant has had a limited number of sessions with mental health care providers.  She has been diagnosed with moderate depression.  Pertinent mental status examinations include most findings within normal limits [Tr. 398, 562,565, 569, 605, 608].  Medication was prescribed for the claimant's depression [Tr. 605].  The claimant stated at the hearing that she had a small number of visits for mental health care, and that in general the prescribed medications helped her [Tr. 61-62].  The record also indicates that the claimant has been advised to decrease her reliance on Xanax; she testified at the hearing that this has been

---

14  Current medical records indicate Plaintiff had a normal gait, normal strength, and intact sensation.  *See, e.g.*, Tr. 314, 330, 398, 405, 410, 413, 562, 569, 580, 585, 605, 608.

difficult to accomplish (B10F/hearing testimony) [Tr. 56, 60, 74, 598-609, 605].

Tr. 38.

On June 24, 2019, Plaintiff had an in-person consultative psychological examination with Nina M. Barnes, Ph.D.  Tr. 39, 413-16. The ALJ notes the report included "a diagnosis of unspecified anxiety disorder."  Tr. 39.

> Findings relative to the mental status examination were mainly within normal limits.  The report notes that the "claimant tended to exaggerate her anxiety symptoms in my opinion" (B6F/1) [Tr. 413].  The findings under Clinical Impression state that "mood-related decrements in concentration would be intermittent and brief related primarily to situational stressors.  The impact of these lapses in concentration would not preclude the timely completion of simple, basic work-related tasks" (B6F/4) [Tr. 416].  The claimant's severe impairment of depression did not preclude her from engaging in substantial gainful activity and therefore was not disabling.

Tr. 39.  After providing this information, the ALJ stated that Dr. Barnes' report included "a diagnosis of anxiety disorder" as opposed to the prior conclusion that the diagnosis was unspecified.  *Id*.  Dr. Barnes provided a diagnosis of "unspecified anxiety disorder."  Tr. 416.  It appears the different characterizations of the diagnosis by the ALJ is a scrivener's error.  The ALJ ultimately determined that Dr. Barnes' "findings are generally consistent with the overall record" and that "[t]he opinion is persuasive."  Tr. 39.

Case No.  4:21cv1-MW/CAS

As noted previously, the regulations applicable to this case remove the treating source rule and state an ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinions. *See* 20 C.F.R. § 404.1520c(a)-(b).  The ALJ restated this general rule, Tr. 39, but noted: "The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

> The consultative examination report in B6F includes a diagnosis of anxiety disorder [Tr. 416; *see supra* at 21-23]. Its findings are generally consistent with the overall record. The opinion is persuasive.
>
> The mental health reviewer in B6A finds that the claimant has a non-severe mental impairment, and mild limitations in all of the "[paragraph] B criteria [Tr. 131-32-June 28, 2019]."  While this opinion is mostly persuasive based on the date it was written, I find that the claimant has a severe mental impairment, and mostly moderate limitations in the "[paragraph] B criteria," based on evidence received at the hearing level.  The claimant is not disabled (e.g., B4F/B5F/B6F/B8F/B9F/B10F/B13F/ hearing testimony).
>
> The reviewing physicians in B3A [Tr. 117-19-Mar. 3, 2019] and 6A [Tr. 133-36-July 7, 2019] assign a light exertional level, with postural and environmental limitations.[15]

---

[15]  The July 7, 2019, the State agency reconsideration determinations included records from TOC of April 3, 2019, which noted, in part, that Plaintiff's range of motion decreased and there was moderate muscle tightness and paraspinal muscle tightness and tenderness.  Tr. 130 135-36, 419.  These determinations also included reference to Dr. Barnes' June 24, 2019, report.  Tr. 130.  The findings of a State agency medical consultant may provide additional evidence to support the ALJ's findings.  *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  *See also* Kemp v. Astrue, 308 F. App'x 423, 427 (11th Cir. 2009) (unpublished) ("the weight to be given [to] a non-examining physician's opinion, depends, among other things, on the extent on which it is supported

These opinions are mostly persuasive, but the undersigned has increased limitations based on evidence received at the hearing level. The claimant is not disabled. (*e.g.*,B4F/B5F/B6F/B8F/B9F/B10F/B13F/hearing testimony).

The opinion in B12F [Dr. Dulay] is not persuasive. It includes extreme limits relative to sit/stand/walk, changing positions at will, taking frequent breaks, using hands for manipulation and reaching, being off task, lifting less than 5 pounds, and being incapable of low stress work, that are not supported by the overall record. Residual functional capacity includes reasonable exertional, postural, inability of, environmental, and mental limitations. based on a review of the overall record. The claimant is not disabled.

In sum, the above residual functional capacity assessment is supported by the weight of the evidence. After fully considering the objective medical evidence of record, the claimant's subjective complaints, and the treatment required for her conditions, the undersigned concludes that the preponderance of the evidence, in light of the assessment of the consistency of the allegations with the record, supports her ability to perform the above residual functional capacity.

Tr. 39.

Immediately thereafter, the ALJ discusses Dr. Dulay's two-page check-off opinion and found it "not persuasive." Tr. 40; *see supra* at 14-16.

---

by clinical findings and is consistent with other evidence."). Here, the ALJ, contrary to the agency consultants, determined Plaintiff has "increased limitations." Tr. 39.

Plaintiff has not shown that the ALJ erred when considering the medical and other evidence, including Dr. Dulay's opinion.

2.

Closely allied with the prior point, Plaintiff argues that in determining her RFC, the ALJ did not properly consider all the evidence, including the medical opinion of Dr. Dulay.  ECF No. 19 at 10-18; *see supra* at 14-17, 24-25 (ALJ's assessment of Dr. Dulay's opinions).

The ALJ assessed Plaintiff's RFC during the relevant period from the amended alleged onset date of December 12, 2018, to the date last insured, December 31, 2019.  Tr. 31-42.

The overall medical evidence and the other evidence in the record recited by the ALJ supports the ALJ's finding that Dr. DeLay's opinion was not persuasive.  Plaintiff suggests the ALJ improperly substituted his judgment for that of Dr. DeLay.  *See* ECF No. 19 at 10.  As noted above, the responsibility to determine a claimant's RFC is based on all the evidence.  *See supra* at 9-10 n.7.  An ALJ does not substitute judgment for that of a medical source by simply carrying out the regulatory role as an adjudicator who is responsible for assessing a claimant's RFC.  Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 486, 488 (11th Cir. 2012) (unpublished).

Plaintiff also argues the ALJ considered Plaintiff's impairments separately rather than in combination.  ECF No. 19 at 15.  The ALJ's decision reflects proper consideration of Plaintiff's impairments as a whole and in evaluating her claim.  Tr. 34-40.  The ALJ expressly found that Plaintiff did not have "an impairment or combination of impairments" that met or equaled a listing, which is sufficient evidence that he considered the combined effect of Plaintiff's impairments.  Tr. 34.  *See* Wilson, 284 F.3d at 1224-25; Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991).

Furthermore, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted is consistent with the objective medical evidence and other evidence."  Tr. 36.  The ALJ also explained that the RFC assessment included a light exertional level to address Plaintiff's physical impairments.  Tr. 39.  Limitations on standing and walking address Plaintiff's impairments relative to her back, lower extremities, and obesity, as do postural and environmental limitations.  Tr. 39.  Manipulative limitations address impairments related to Plaintiff's right upper extremity.  *Id.*  Mental limitations including simple routine tasks, *see supra* at 6 n.5, frequent interaction with the public, and few changes in the work setting, address Plaintiffs mental health issues.  *Id.*

In essence, Plaintiff is requesting this Court to reweigh the evidence and draw different conclusions from the same evidence.  *See supra* at 7 n.6.  No error has been shown.

3.

Plaintiff also argues substantial evidence does not support the ALJ's reasons for finding her statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record.  ECF No. 19 at 16-18. Substantial evidence supports the ALJ's credibility determinations of Plaintiff.  *See* Tr. 36, 39.

The credibility of the claimant's testimony must be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain.  Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988); *see* Moore v. Barnhart, 405 F.3d at 1212 ("credibility determinations are the province of the ALJ").  If an ALJ refuses to credit subjective pain testimony where such testimony is critical, the ALJ must articulate specific reasons for questioning the claimant's credibility. *See* Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *Id*.  On the other

hand, "[a] clearly articulated finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995).

The objective evidence from the record is not consistent with Plaintiff's subjective complaints of disabling pain. Plaintiff did not establish additional functional limitations that preclude activity within the RFC found by the ALJ. *See, e.g.*, Tr. 39. Rather, the ALJ considered Plaintiff's mental and physical impairments and properly accounted for functional limitations in the RFC.

As noted above, the ALJ considered Plaintiff's treatment records. Tr. 37-39. The ALJ also considered that despite Plaintiff's allegations that her functioning was severely limited, Tr. 36, she nonetheless interacts with family members, attends church services regularly, drives an automobile, shops in stores, prepares simple meals, performs lighter household chores, manages her finances, interacts with personnel during medical office visits, and functioned sufficiently at the hearing.[16] Tr. 34-36, 261-63; *but see*

---

[16] The ALJ makes these findings at Step 3 and before Step 4. Tr. 34-36. These findings are derived, in part, from Exhibits B2E, B3E, B7E, B9E, and B10E, which include pain and supplemental pain questionnaires. Tr. 34-36, 67-74 (hearing transcript), 241-43, 255-57, 259-69. Plaintiff refers to portions of the function reports that support her claims. ECF No. 19 at 15-18. As part of the RFC determination, the ALJ refers to the "initial claim form" which asserts five disabling conditions. Tr. 36. The ALJ then refers to the questionnaires wherein Plaintiff asserts that her "pain and anxiety negatively impact her overall functionality and activities of daily living" and her inability

Tr. 256-57, 260-63. Driving an automobile reasonably requires the ability to open the door, grasp and buckle the seatbelt, and grasp and control the steering wheel, as well as maintain an awareness of other vehicles and pedestrians and roadsides. Although not dispositive, the claimant's activities may show that her symptoms are not as limiting as alleged and as reflected in the ALJ's RFC. *See* <u>Macia v. Bowen</u>, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1527(c)(4), 404.1529(c)(3)(i). *But see* <u>Lewis v. Callahan</u>, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

The ALJ evaluated Plaintiff's subjective allegations of pain and limitations under the proper legal standard and provided reasons for discounting her subjective complaints of disabling pain, notwithstanding evidence to the contrary as noted by Plaintiff. *See, e.g.*, ECF No. 19 at 17-18. Tr. 36-39; *see supra* at 28-29 n.16. The ALJ considered objective

---

to, *e.g.*, "lift, squat, bend, stand, reach, *etc.*" *Id*. The ALJ also refers to Plaintiff's hearing testimony where Plaintiff describes the effects of her pain and lack of concentration, *etc*. *Id*. But it is the function of the ALJ, not the Court to resolve inconsistencies in the record based on consideration of the entire record. The Court cannot reasonably conclude that the ALJ overlooked Plaintiff's favorable comments or that he misapplied controlling law or that the ALJ's determinations are not supported by substantial evidence.

Case No. 4:21cv1-MW/CAS

evidence of Plaintiff's impairments and concluded the evidence did not support Plaintiff's complaints or limitations. *Id.* No error has been shown.

## V. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for DIB be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on January 10, 2022.

**s/  Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**